IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 15-01-H-DLC |
|---|---|
| Plaintiff/Respondent, | |
| vs. | ORDER |
| ERIKA RAE BROWN, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Erika Rae Brown's motion to vacate, set aside, or correct her sentence, pursuant to 28 U.S.C. § 2255. Brown is a federal prisoner proceeding pro se.

## I. Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the

1

burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On January 7, 2015, a grand jury indicted Brown on two counts of money laundering, violations of 18 U.S.C. § 1957 (Counts 1 and 2), and two counts of making a false statement to a government agency, violations of 18 U.S.C. § 1001(a)(2) and (3) (Counts 3 and 4). The Indictment alleged that Brown defrauded Excel National Bank ("the Bank") by persuading it to loan millions of dollars to blueVault LLC, a company purportedly organizing construction and management of a data storage company near Darby, Montana. Brown presented fictitious letters of intent to use blueVault's services or to purchase the company. She also presented false invoices and checks to obtain two disbursements of $19,980 from the Bank in February and March 2010. The United States Department of Agriculture ("USDA") guaranteed the Bank's loan to Brown. In November 2011, Brown made false statements and provided false documents to USDA. *See* Indictment (Doc. 1) at 1-5.

If convicted on Counts 1 or 2, Brown faced a maximum prison sentence of ten years and/or a maximum fine of the greater of $250,000, twice the amount of

any criminally derived property, or twice the pecuniary gain or loss. *See* 18 U.S.C. §§ 1957(b)(1), 3571(b)(3), (d). If convicted on Counts 3 or 4, Brown faced a maximum prison sentence of five years and/or a fine up to $250,000. *See id.* § 1001(a).

On March 4, 2015, Brown moved to change her plea from not guilty to guilty. A plea agreement was filed on March 10, 2015. Brown agreed to plead guilty to Count 1. The United States agreed to dismiss Counts 2, 3, and 4 and conditionally agreed to seek a three-level reduction in the offense level for acceptance of responsibility, and agreed to recommend a sentence at the low end of an advisory guideline range of 57 to 71 months. Both parties conditionally agreed to waive appeal. *See* Plea Agreement (Doc. 13) at 2 ¶ 2, 6-7 ¶ 6 paras. 1-2, 7 ¶ 8(a) para. 1. As to restitution, the agreement provided:

> *Restitution to the United States Department of Agriculture and EH National Bank*[1]
> Counts II through IV gave rise to this plea agreement. 18 U.S.C. § 3663A(c)(2). The defendant acknowledges and agrees to be responsible for complete restitution regardless of whether a count or counts of the Indictment will be dismissed as part of this plea agreement. 18 U.S.C. § 3663A(a)(3). In particular, the defendant agrees to pay $2,987,678.26 to the United States Department of Agriculture and $753,369.56 to EH National Bank. Moreover, the defendant acknowledges that additional restitution may be ordered upon a final loss settlement between the United States Department of Agriculture and EH National Bank. See 18 U.S.C. § 3664(d)(5).

---

[1] Excel National Bank changed its name to EH National Bank on November 10, 2011. *See* Offer of Proof (Doc. 22) at 8 n.1. In this order, the entity is called simply "the Bank."

*Id.* at 3 ¶ 3 para. 2. No provision of the plea agreement was binding on the Court. *See id.* at 2 ¶ 3, 7 ¶ 6 para. 2; Fed. R. Crim. P. 11(c)(1); Change of Plea Tr. (Doc. 51) at 5:23-8:10.

At the change of plea hearing, the parties explained that Brown obtained a $4 million loan and "the entire bank loan is the specified unlawful activity." The discrete amount of $19,980 paid to S.M. on February 12, 2010, was selected to establish a specific transaction involving more than $10,000. *See* 18 U.S.C. § 1957(a); Change of Plea Tr. at 29:13-31:20. In response to the United States' offer of proof, Brown personally stated that A.T., who worked on the project business plan, "did not say anything about the project being unfeasible for the location and having high start-up costs which would make it non-feasible." Change of Plea Tr. at 34:9-13; *compare* Offer of Proof (Doc. 22) at 4 para. 3. Brown pled guilty to Count 1 in open court. *See* Change of Plea Tr. at 35:12-14.

The United States Probation Office drafted a presentence report. *See* Fed. R. Crim. P. 32(d)-(g). The Probation Office calculated the loss at $4,588,287, or more than $2.5 million but less than $7 million, resulting in an 18-level upward adjustment under U.S.S.G. § 2B1.1(b)(1)(J). *See* Presentence Report ¶ 49. Brown objected by tracing the allocation of the proceeds of the loan, eliminating the sums that went to other people or entities, and arguing that the amount of the loss should be limited to Brown's own personal gain of $64,261. *See* Objection #1,

Presentence Report at 34 para. 2, 35 para. 5; *see also* U.S.S.G. § 2B1.1 cmt. n.3(B) (Nov. 1, 2014). Brown also objected to S.M.'s receipt of restitution on the grounds that he should be viewed as a co-conspirator rather than a victim. *See* Objection #2, Presentence Report at 35-36.

At sentencing, S.M. did not appear. The United States withdrew its request for restitution for him. *See* Sentencing Tr. at 4:22-5:8. Brown's objection to the amount of the loss was overruled. The final loss amount was $3,741,047.82, the same as the amount of restitution set forth in the plea agreement. Brown was sentenced to serve 56 months in prison, to be followed by a three-year term of supervised release. She was also required to pay $2,987,678.26 to USDA and $753,369.56 to the Bank, as the plea agreement required.

Brown appealed, challenging the loss amount and the sentencing court's denial of her request for a downward variance. The Ninth Circuit Court of Appeals affirmed her sentence. Her conviction became final on December 14, 2016. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). She timely filed her § 2255 motion on July 10, 2017. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Brown claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of

the proceedings, Brown must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Brown's claims are reorganized here, but all are addressed. Three of her claims go to the voluntariness of her guilty plea. She also contends the prosecution breached the plea agreement and that her advisory guideline range was incorrectly calculated.

### A. Voluntariness of Guilty Plea

#### 1. Money Laundering Conviction

Brown claims counsel failed to recognize defenses to money laundering and that she would not have pled guilty if she knew she had these defenses.

Brown is correct that the crime of money laundering must be separate and distinct from the crime that generates the laundered money. She is incorrect that there was no such separate crime in her case. *See* Mot. for Relief (Doc. 66-1) at 9.[2] Brown lied to the Bank to obtain money. That is bank fraud. *See* 18 U.S.C. §

---

[2] Page numbers refer to CM/ECF numbers rather than the page number of the document. CM/ECF numbers each page of a document serially.

1344. The indictment specifically pled bank fraud as the predicate offense for the two money laundering counts. *See* Indictment at 2 ¶ 4, 3 ¶ 10, 4 ¶ 12 (all citing 18 U.S.C. § 1344). Counsel did not fail to spot a defense.

Brown also claims that her payments to S.M. could not support money laundering charges under *United States v. Moreland*, 622 F.3d 1147, 1166 (9th Cir. 2010). *See* Mot. for Relief at 10. *Moreland* followed *United States v. Santos*, 553 U.S. 507 (2008) (plurality op.), in determining the scope of the term "proceeds" as used in 18 U.S.C. § 1956. *See Santos*, 553 U.S. at 509-14; *id.* at 524-26 (Stevens, J., concurring); *Moreland*, 622 F.3d at 1163-70. Brown was prosecuted under 18 U.S.C. § 1957. Section 1957 prohibits engaging in any monetary transaction using property with a value of more than $10,000 that is known to have been derived from a crime. The term "proceeds" does not appear. Each transaction of more than $10,000 using money obtained as a result of bank fraud is a violation of § 1957. *Moreland* and *Santos* do not apply. Again, counsel did not fail to spot a defense.

By her own allegations, Brown would have gone to trial only if she had a potential defense. *See* Brown Aff. (Doc. 66-3) at 3 ¶ 5. She does not show she had a defense. This claim is denied.

### 2. Amount of Restitution

Brown agreed to pay $3,741,048.21 in restitution, that is, $2,987,678.26 to

7

be paid to USDA and $753,369.56 to the Bank. *See* Plea Agreement (Doc. 13) at 3 ¶ 3 para. 2. She now contends that counsel's advice to agree to that amount was unreasonable.

Brown's own exhibits demonstrate why counsel's advice was reasonable. *See, e.g.*, Ex. A (Doc. 66-2) at 3-4; 18 U.S.C. §§ 3663A(b)(4), 3664(f), (j)(2).[3] Brown raises several arguments, but they are not supported by the law.

Brown claims many other people were also responsible for the scheme. She also contends that both S.M. and the Bank had "unclean hands"—S.M. because he agreed to act contrary to the Bank's requirements and the Bank because it allegedly misrepresented facts to USDA. *See, e.g.*, Brown Aff. (Doc. 66-3) at 3-12 ¶¶ 6-46; Mot. for Relief (Doc. 66-1) at 11-12.[4] As Brown was not ordered to pay restitution to S.M., arguments as to him are moot. Even assuming the Bank's hands were unclean in dealing with USDA, the Bank did not participate in Brown's scheme to defraud it or in Brown's laundering of the proceeds of the loan. As to the other individuals Brown names, a sentencing court may "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic

---

[3] Because money laundering "infring[es] on a victim's property interest," it is an "offense against property," and the Mandatory Victim Restitution Act applies. *See United States v. Luis*, 765 F.3d 1061, 1065-66 (9th Cir. 2014); 18 U.S.C. § 3663A(c)(1)(A)(ii); Presentence Report ¶ 125.

[4] Brown might have a point if the Bank's alleged misrepresentations to USDA caused USDA to lose more money than it would have lost as a result of Brown's conduct alone. But Brown does not make that claim, and the facts she alleges do not support it.

8

circumstances of each defendant" if it "finds that more than 1 defendant has contributed to the loss." 18 U.S.C. § 3664(h). Brown was the only defendant before the Court. Apportionment was not an option.

Brown's arguments for various offsets, *see* Brown Aff. (Doc. 66-3) at 14-15 ¶ 50(a)-(k), are meritless. Restitution is determined without regard to other compensation a victim may receive. *See, e.g.*, 18 U.S.C. § 3664(f)(1)(B), (j)(2); *Robers v. United States*, 134 S. Ct. 1854, 1858 (2014) (describing statutory mechanisms for avoiding undercompensation and windfall).

Brown claims the Bank could have realized more money from sale of the real property partially securing the loan if it had followed industry-standard practices. She points to the concurring opinion in *Robers*, which suggested a defendant might "show—with evidence specific to the market at issue—that a victim delayed unreasonably in selling collateral, manifesting a choice to hold the collateral" rather than sell it. *Id.* at 1861 (Sotomayor, J., concurring). But this opinion is based on the statute's requirement that the defendant must be the proximate cause of the victim's harm. *See* 18 U.S.C. § 3663A(b)(1)(B); *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010). When a lender forecloses on collateral and initially intends to hold it as an investment, then belatedly changes its mind and sells, some portion of its loss is not proximately caused by the defendant. *See Robers*, 134 S. Ct. at 1860. Brown's argument is different.

9

She complains the sale took place too soon, when the Bank should have held the collateral to allow property values to recover further. *See, e.g.*, Brown Aff. at 14-17 ¶¶ 51-62. This is not an argument that Brown did not proximately cause the Bank's loss; it is an argument that the Bank failed to mitigate the loss Brown caused. Neither the majority nor the concurrence in *Robers* suggest a victim has a duty to the criminal defendant to mitigate damages, and certainly the restitution statutes do not say so. As the majority in *Robers* observed, "losses in part incurred through a decline in the value of collateral sold are directly related to an offender's having obtained collateralized property through fraud." 134 S. Ct. at 1859.

Brown claims that *United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008), supported her argument that the amount of the loss was uncertain. It did not. *Waknine* concerned a unique sort of loan notably lacking in documentation. It was a RICO case. The criminal defendant was not the borrower but the lender, and "the government could not discern the actual amount loaned" to the victim. *See id.* at 550. Here, the amount of the loan and the amount of restitution were readily ascertainable.

Brown's allegations do not support an inference either that counsel unreasonably agreed to restitution of $3,741,048.21 or that Brown was prejudiced as a result. This claim is denied.

### 3. Guideline Range Underlying Sentence Recommendation

This claim is addressed in a separate Order.

### B. Breach of Plea Agreement

Brown claims the United States breached the plea agreement by failing to recommend a sentence at the low end of the guideline range. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

The plea agreement said:

> The United States will also recommend the defendant be sentenced at the low end of an advisory guideline range of 57 to 71 months. The parties reserve the right to make any other arguments at the time of sentencing. Defendant understands that the Court is not bound by this recommendation.

Plea Agreement at 7 ¶ 6 para. 2. At sentencing, the court found the guideline range was 51 to 63 months, not 57 to 71 months. The United States recommended a sentence of 57 months. *See* Sentencing Tr. (Doc. 52) at 19:6-8.

Brown interprets the plea agreement to require the United States to recommend a sentence at the low end of whatever advisory guideline range was found to apply. But that interpretation fails to account for the mention of a specific guideline range of 57 to 71 months. It is not clear why a range of 57 to 71 months is mentioned, but the reason cannot be that the parties intended any other guideline

11

range. Brown's construction of the agreement is not plausible.

The agreement might be ambiguous, and ambiguity must be construed in favor the defendant. Here, however, none of the plausible constructions are helpful to Brown. The agreement could be read as simply requiring the United States to recommend a sentence of 57 to 61 months, the "low end" of the 15-month range, as opposed to the middle 62 to 66 months or the high end of 67 to 71 months. Or it could be understood to require the United States to recommend both a guideline range of 57 to 71 months and a sentence at the low end of the range. Or it could be read to require the United States to recommend 57 months only if the guideline range proved to be 57 to 71 months. Or, with some unexplained surplusage, it could be interpreted to require the United States to recommend 57 months, period.

Whichever of these plausible constructions controls, the United States did not breach the agreement by recommending 57 months. Even if the prosecution should have formally recommended a guideline range of 57 to 71 months, its failure to do so did not deprive Brown of anything that could have been an inducement for her to plead guilty. This claim is denied.

### C. Sentencing

#### 1. "Actual Loss" Under the Sentencing Guidelines

Brown asserts that counsel unreasonably accepted the parties' agreed restitution amount, about $3.7 million, as the amount of the loss for purposes of

calculating the advisory guideline range.[5] The loss amount resulted in an 18-level enhancement of the base offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J).

Brown's arguments are generally predicated on a mistaken belief that actual loss is a matter of economic reality. Under the Guidelines, it is not. "Actual loss" is "the *greater* of actual *or* intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A) (Nov. 1, 2014); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) (holding that guideline commentary is generally authoritative). In a case involving a fraudulently obtained loan, courts define actual loss as "the *reasonably foreseeable* pecuniary harm from the fraud." *United States v. Morris*, 744 F.3d 1373, 1375 (9th Cir. 2014) (emphasis added). Because the important point is reasonable foreseeability, not economic reality, the amount of the loss "will almost always be the entire value of the principal of the loan, as it is reasonably foreseeable to an unqualified borrower that the entire amount of a fraudulently obtained loan may be lost." *Id.*; *see also* Change of Plea Tr. (Doc. 51) at 30:10-12, 31:11-16.

This approach ensures that "defendants who fraudulently induce financial institutions to assume the risk of lending to an unqualified borrower are

---

[5] Counsel objected to the probation officer's calculation of the loss amount, which was $4,588,287. *See* Presentence Report ¶¶ 40, 49; Presentence Report Addendum at 33-35. The sentencing court used the amount of restitution as the loss amount, evidently because it was not contested. *See* Sentencing Tr. (Doc. 52) at 5:13-20. Some amounts that may be included in restitution cannot be included in determining the amount of the loss under the Guidelines, but, as shown below, even if the loss amount had been calculated separately from restitution, the loss would have exceeded $2.5 million, the threshold amount for an 18-level upward adjustment.

13

responsible for the natural consequences of their fraudulent conduct." *Morris*, 744 F.3d at 1375. For instance, if a person fraudulently obtains a $2 million loan and is detected before any money is disbursed, $2 million is still the actual loss under the terminology of the guidelines. If a person fraudulently obtains a $2 million loan, receives all the money, is detected, and then pays back both the principal and the all the interest that would have been paid over the life of the loan, the actual loss under the guidelines remains $2 million.

The guidelines exclude "[i]nterest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs" from the loss amount. They also exclude costs incurred by the government or by victims in connection with "the prosecution and criminal investigation of an offense." *See* U.S.S.G. § 2B1.1 cmt. n.3(D)(i), (ii). They do not exclude any other loss caused by the defendant. The items Brown claims should have been excluded, *see* Brown Aff. (Doc. 66-3) at 14-15 ¶ 50(a)-(k), either could not be excluded or ignore the loss to USDA (or both). For instance, interest paid on a loan obviously does not reduce the amount of the principal. Brown states that the Bank filed a civil lawsuit in November 2015 to recover money from others harmed by Brown's conduct. *See* Mot. for Relief at 4 n.3; Brown Aff. (Doc. 66-3) at 26 ¶ 98. That was four months after sentencing, not "before the offense was detected." U.S.S.G. § 2B1.1 cmt. n.3(E)(i).

14

Taking account only of the loss of principal on the loan, $3,919,676.79, and the return on principal obtained by sale of collateral, $619,563.32, *see* Ex. A (Doc. 66-2) at 3; U.S.S.G. § 2B1.1 cmt. n.3(E)(ii), the amount of the loss was $3.3 million. There is no reason to question the presentence report's figure of $4,588,287, but, in any event, Brown was not prejudiced by the discrepancy between restitution and the amount of the loss. Whether the figure was $3.3 million, $3.7 million, or $4.6 million, the 18-level enhancement applied under U.S.S.G. § 2B1.1(b)(1)(J). *See also* Sentencing Tr. (Doc. 52) at 5:16-20.

Brown's allegations do not support an inference either that counsel's performance was unreasonable or that Brown was prejudiced as a result. This claim is denied.

### 2. Relevance of *United States v. Sann*, No. CR 13-43-M-DLC

Brown claims her sentence was disproportionate to a sentence imposed in another case. *See, e.g.*, Mot. for Relief (Doc. 66-1) at 6, 45-46; Brown Aff. (Doc. 66-3) at 25 ¶¶ 96-97. Defendant Steven Sann was sentenced to serve 24 months in prison for his leading role in a scheme involving a loss that could have been as high as $70 million, whereas Brown was sentenced to serve 56 months for a scheme involving a loss of about $4 million. Sann obtained the United States' agreement that a sentence of 24 months was appropriate. Brown did not. Any disparity between Brown and Sann was not "unwarranted." *See* 18 U.S.C. §

15

3553(a)(6). This claim is denied.

## IV. Letters to Probation Office

Brown sent a large package of inquiries and information to the probation officer who compiled the presentence report. The probation officer completed work on the presentence report before it was filed. The report is now a document of record with the Court. If Brown believes the presentence report should and lawfully may be amended, she must file a motion with the Court. The probation officer has no obligation to respond to her.

Accordingly, IT IS HEREBY ORDERED that, except for Brown's claim regarding the guideline range underlying the United States' sentencing recommendation, all claims are DENIED for lack of merit. They will not be further considered.

DATED this 13th day of February, 2018.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court